## EMPLOYERS' LIABILITY ASSUR. CORP. et al. v. SHOWALTER et al.

No. 26088.   Dec. 17, 1935.

Butler & Brown, for petitioners.

Edgerton & Vickers, for respondent Letta C. Dean.

C. B. Rockwood, for respondent O. C. Showalter.

Gibson, Maxey & Holleman, for respondents O. O. Owens and United States Fidelity & Guaranty Company.

BAYLESS, J. This is an original proceeding to have this court review an award of the State Industrial Commission. An award was made in favor of O. C. Showalter, an injured employee, and against Letta C. Dean, his employer, and Employers' Liability Assurance Corporation, as insurance carrier of Letta C. Dean, as the ones primarily liable under the Workmen's Compensation Law, and against Bay State Oil Corporation (for which Letta C. Dean was drilling a well) and Employers' Liability Assurance Corporation, its admitted insurance carrier, as the ones secondarily liable under the Workmen's Compensation Law; and said award had the effect of finding and holding inferentially that there was neither primary nor secondary liability on the part of O. O. Owens (alleged to have been jointly interested with Bay State Oil Corporation) and the United States Fidelity & Guaranty Company, his admitted insurance carrier.

No contention is made concerning the correctness of the award in favor of the injured employee, nor of Letta C. Dean's liability therefor as his employer. The controversy presented to us for determination raises the issues of who was Letta C. Dean's insurance carrier; whether there was any secondary liability on the part of Bay State; and, if so, whether O. O. Owens was jointly liable with it. Letta C. Dean contends the Employer's Liability Assurance Corporation was her insurance carrier. Employer's Liability Assurance Corporation denies this, but admits it was Bay State's insurance carrier, and insists that O. O. Owens and United States Fidelity & Guaranty Company were jointly secondarily liable with Bay State and itself; O. O. Owens and United States Fidelity & Guaranty Company, deny this.

The facts are these: Dean and three others were engaged in drilling a well and procured a policy of workmen's compensation insurance from Employers' Liability Assurance Corporation, through Welch & MacCurdy, its agents. In the declarations made by the applicants and a part of the insurance contract, these parties are described as "copartnership," and the location of their work was given as "25-18-8 Creek county and elsewhere in Oklahoma." When the well being drilled in section 25 was completed. Dean did not want to abandon the well, but desired to develop it further, but the other three partners engaged with her refused. The other three partners thereupon sold their entire interest in the well and partnership property to Dean and passed out of the picture. Dean pursued the development of this well further, but was forced to abandon it eventually as a dry hole. The facts heretofore stated are upon undisputed evidence, but there is a dispute in the evidence upon the facts immediately following, but such facts as stated by us represent the findings of the Industrial Commission based upon disputed evidence. When Dean acquired the interest of the other partners, she caused inquiry to be made of Welch & MacCurdy, agents for the Employers' Liability Assurance Corporation, as to whether the assignments by the other partners to her of the insurance policy were effective, or, inferentially, whether it would be necessary for her to procure new insurance. Welch & MacCurdy assured her on at least two occasions that she was covered by the policy theretofore issued. When Dean abandoned the well in section 25, she began negotiations with Bay State (in which negotiations Owens took an active part through an interest in the subject-matter) to drill a well for Bay State in section 34, which was away from and entirely disconnected with the well which she had drilled in section 25. Bay State and Owens believed that under the Workmen's Compensation Act they might be held liable to her injured employees for their benefits under the Workmen's Compensation Law unless they required Dean to carry insurance for their protection, and before they would contract with Dean they required assurance from her that she had workmen's compensation insurance. Whereupon Dean referred them to Welch & MacCurdy for confirmation, and upon inquiry being made of Welch & MacCurdy they informed Bay State and Owens that Dean was carrying a policy of insurance written by them for Employers' Liability Assurance Corporation. Bay State thereupon contracted with Dean for the drilling of a well in section 34, and the injured employee received his injury while working thereon. The Employers' Liability Assurance Corporation paid the benefits under the Workmen's Compensation Law to the injured employee for sometime, but when it learned of the fact that Dean was operating alone under the policy, it thereupon denied any liability as her insurance carrier, and sought to have the secondary liability determined and divided.

Employers' Liability Assurance Corporation contends that the policy has a provision prohibiting the assignment thereof or a change in the insured without its written consent. The others contest this by saying that an assignment by three partners to the fourth and the operation under the policy by a fourth partner alone do not constitute a change of coverage within the purview of the policy provision, and that the acts of the agent of the Employers' Liability Assurance Corporation when informed of this change are sufficient to constitute a waiver or a ratification or to amount to estoppel.

The courts seem generally in accord in holding that provisions for the forfeiting of insurance coverage in the case of alienation, change of interest, title, or possession, and the like, without the insurer's consent, may be lawfully inserted in a policy and are reasonable, valid, and enforceable. There seems to be an exception to this general rule in the instance of sales by and between partners. This point is treated exhaustively in Couch, Cyclopedia of Insurance Law, vol. 5, p. 3552, sec. 1017, which summarizes the rule as follows:

"As this alignment of states indicates, the broad rule or principle supported by the weight of authority, and, it is submitted, of reasoning, is that a sale between partners is not such a transfer as will avoid the policy, especially where the transferring partner reserves an interest; and a question may fairly be raised whether such a transaction is within a stipulation against a change. * * *"

It does not appear that this court has passed upon the question. It would seem almost hopeless to endeavor to formulate a rule for this jurisdiction which would not conflict with the announced views of other courts. Many of the cases on both sides of the question take the matter up and dispose of it without special analysis or reasoning. Other courts go into the matter at great length.

Among those courts holding that a transfer between partners is a violation of the provision against a change without consent are those of Missouri. In the case of Rendelmen v. Levitt (Mo. App.) 24 S. W. (2d) 211, it was held that workmen's compensation insurance policies were not assignable to anyone without the consent of the insurer, and the court gave its reason therefor which we quote:

"A compensation policy, such as involved here, is peculiarly personal. In the issuing of such a policy much depends upon the character of the insured employer relative to his integrity, prudence, caution, and ability, in the management and operation of his business, and in the se'ection and supervision of his employees. It would seem, therefore, that such a policy, on principle, is not assignable without the assent of the insurer."

It strikes us that such reasoning would not apply in its full force to transfers between partners where no new person is brought under the protection of the contract. However, we are reluctant to pass definitely on that point in cases involving proceedings of the State Industrial Commission, since pleadings are not required and since the rules of evidence are not applied with the degree of strictness adopted by trial courts. In the record before us there are no pleadings which raise the issues of waiver, constructive consent or ratification, or estoppel by contract. The record is incomplete so far as the authority of the agents in the issuance of the policy, payment of premiums, etc., is concerned. In our opinion there is evidence in the record to justify the finding and holding of the State Industrial Commission that the Employers' Liability Assurance Corporation was the insurance carrier of Dean..

We are of the opinion that the Employers' Liability Assurance Corporation should not now be heard to contend that it was not the insurance carrier of Dean for the following reason: (1) Dean was among those to whom the policy was intended to be issued and the contract was personal as between Dean and the company even though others were interested therein; (2) when Dean applied for information as to whether it was necessary to procure new insurance, the agents of the Employers' Liability Assurance Corporation assured her that she continued to be covered by the original policy. The converse of this must be true. (3) Dean thereafter operated and incurred liability under the Workmen's Compensation Law under the belief she was covered by this policy of insurance; and (4) when others who sought to contract with Dean and who were obligated by law to see that she carried such insurance coverage inquired of the Employers' Liability Assurance Corporation's agents, they were informed that Dean had proper workmen's compensation insurance coverage. Therefore, our opinion upon the liability of the Employers' Liability Assurance Corporation as Dean's insurance carrier is not made to turn upon an application of the law relating to the policy provision alone, nor is it based on a strict and technical application of the law of waiver or ratification or estoppel. It is based upon a combination of these elements as they appear in the record before us and as they necessarily affect each other in this record. We are of the opinion that under such a combination the Employers' Liability Assurance Corporation should be held liable to Dean under its policy of insurance.

It becomes unnecessary therefore to determine who was secondarily liable since the immediate employer has complied with the Workmen's Compensation Law and has provided insurance coverage.

That part of the award against Letta C. Dean, as employer and the Employers' Liability Assurance Corporation, as her insurance carrier, is affirmed, and that part of the award relating to the question of who is secondarily liable is vacated.

McNEILL. C. J., OSBORN, V. C. J., and BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. RILEY and WELCH, JJ., dissent.